IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HTC CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant | Civil Action No.: 11-785-GMS<br><br>DEMAND FOR JURY TRIAL<br><br>**REDACTED-PUBLIC VERSION** |

**DEFENDANT APPLE INC.'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(1) FOR LACK OF STANDING**

*Of Counsel:*

Mark Fowler (*Pro Hac Vice*)
Christine Corbett (*Pro Hac Vice*)
Carrie Williamson (*Pro Hac Vice*)
Krista Celentano (*Pro Hac Vice*)
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA  94303-2215
Phone: (650) 833-2065
Fax:     (650) 687-1204

Richard B. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Defendant Apple Inc.*

Dated:  August 22, 2012

Public version filed October 3, 2012

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................................. 1
II. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 3
III. SUMMARY OF ARGUMENT ........................................................................................... 3
IV. STATEMENT OF FACTS .................................................................................................. 3
V.  ARGUMENT ......................................................................................................................... 4
    A.  Legal Standard ............................................................................................................ 4
    B.  HTC Does Not Hold All Substantial Rights To The Asserted Patents. .................. 6
        1.  HTC Does Not Hold Exclusionary Rights to the Asserted Patents ........... 7
        2.  HTC Does Not Have The Ability To Sue Any Third-Party ....................... 9
        3.  HTC Faces Significant Restrictions On Its Ability To Transfer The Asserted Patents To A Third-Party ............................................................ 10
        4.  The Title of The Agreement Does Not Convey Substantial Rights Onto HTC ................................................................................................................ 11
    C.  HTC's Reliance On A "Common Interest Privilege" Between HTC and Google Highlights Google's Continued Legal Interest In the Asserted Patents. ....................................................................................................................... 12
VI. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abbott Labs. v. Diamedix Corp.*,
   47 F.3d 1128, 1132 (Fed. Cir. 1995)..................................................................................10

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   625 F.3d 1359, 1363 (Fed. Cir. 2010)..................................................................................4

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336, 1340 (Fed. Cir. 2006)................................................................................12

*Asymmetrx, Inc.* v. *Biocare Med., LLC*,
   582 F.3d 1314, 1319 (Fed. Cir. 2009)..................................................................................5

*Constar Int'l, Inc. v. Cont'l Pet Techs., Inc.*,
   2003 WL 22769044, at *1 (D. Del. 2003) .........................................................................13

*Corning Inc. v. SRU Biosystems, LLC*,
   223 F.R.D. 189, 190 (D. Del. 2004) ..................................................................................13

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
   630 F. Supp. 2d 365, 371 (D. Del. 2007) ............................................................................9

*Gaia Tech., Inc. v. Reconversion Tech., Inc.*,
   93 F.3d 774, 780 (Fed. Cir. 1996).......................................................................................5

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*,
   248 F.3d 1333, 1345 (Fed. Cir. 2001)......................................................................5, 10, 12

*Leader Tech., Inc. v. Facebook, Inc.*,
   719 F. Supp. 2d 373, 375 (D. Del. 2010)...........................................................................13

*Lujan v. Defenders of Wildlife*,
   04 U.S. 555, 560 (1992).......................................................................................................4

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332, 1340 (Fed. Cir. 2007)..................................................................................6

*New Medium Tech., LLC v. Barco N.V.*,
   644 F. Supp. 2d 1049, 1054 (N.D. Ill. 2007) .....................................................................10

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
   320 F.3d 1354, 1368 (Fed. Cir. 2003)..................................................................................5

*Paradise Creations, Inc. v. UV Sales, Inc.*,
  315 F.3d 1304, 1309 (Fed. Cir. 2003)..................................................................................5

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372, 1380 (Fed. Cir. 2000)................................................................................10

*Propat Int'l Corp. v. RPost, Inc.*,
  473 F.3d 1187, 1191 (Fed. Cir. 2007).............................................................................5, 10

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  263 F.R.D. 142, 146 (D. Del. 2009) ..................................................................................13

*Schreiber Foods, Inc., v. Beatrice Cheese, Inc.*,
  402 F.3d 1198, 1203 (Fed. Cir. 2005)..................................................................................5

*Sicom Sys., Ltd. v. Agilent Tech., Inc.*,
  971 F.3d 971, 974 (Fed. Cir. 2005)................................................................................9, 10

*Sky Technologies LLC v. SAP AG*,
  576 F.3d 1374, 1379 (Fed. Cir. 2009)................................................................................12

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1251, 1251 (Fed. Cir. 2000)..................................................................................7

*Textile Prod., Inc. v. Mead Corp.*,
  134 F.3d 1481, 1484 (Fed. Cir. 1998).............................................................................6, 8

*Vaupel Textilmaschinen KG* v. *Meccanica Euro Italia SPA*,
  944 F.2d 870, 873-874 (Fed. Cir. 1991)..........................................................................5, 6

*Waterman v. Mackenzie*,
  138 U.S. 252, 255 (1891)....................................................................................................6

*WiAV Solutions LLC v. Motorola, Inc.*,
  631 F.3d 1257, 1265 (Fed. Cir. 2010).............................................................................7, 8

**STATUTES**

35 U.S.C. § 281....................................................................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(1).........................................................................................................5

**I.    INTRODUCTION**

Plaintiff HTC Corporation ("HTC") has sued Apple Inc. ("Apple") for patent infringement of four patents (the "Asserted Patents") that HTC has rented from Google, Inc. ("Google"), apparently for the sole purpose of suing competitor Apple and then returning the patents to their rightful owner – Google. Under the guise of a "Patent Purchase Agreement" (the "Agreement"), Google and HTC actually crafted an agreement that transferred limited rights to HTC, whereby Google retained all the real and proprietary interest in the patents. Indeed, although the Agreement states that ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ For instance:

- ████████████████████████████████████████████

  ████████████████████████████████████████

  ████ ("Corbett Decl."), Ex. A at § 2.2);

- ████████████████████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████(Corbett Decl., Ex. A at § 3.4);

- ████████████████████████████████████████████

  ████████████████████████████████████████ (Corbett

  Decl., Ex. A at § 2.3);

- ████████████████████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████████████████████

  ████████████ (Corbett Decl., Ex. A at § 2.3(c)); and

- ███████████████████████████████████████████

  ███████████████████████████████████████████

  (Corbett Decl., Ex. A at § 2.3(b)).

While HTC faces significant restrictions and encumbrances as an alleged "owner" of the Asserted Patents, ███████████████████████████████████████████ ██████████████████████████ This fact, alone, is fatal to HTC's ability to assert the Asserted Patents.

Indeed, in order to bring suit, HTC must hold "all substantial rights" in the Asserted Patents. HTC and Google's rent-a-patent scheme falls far short of conveying "all substantial rights," given that HTC's ability to sue, license, or assign the Asserted Patents is riddled with restrictions and monetary penalties. The Agreement amounts to nothing more than a transparent attempt by HTC to borrow ammunition to file suit against one major competitor in the market – Apple – and then return the patents to Google. ████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████

Notably, one court has already decided the issue of whether HTC lacked standing to assert patents it "acquired" through the Agreement. Recognizing the fact that not all substantial rights had transferred to HTC, an Administrative Law Judge at the International Trade Commission ("ITC") terminated part of an investigation for lack of standing as it related to the five other patents that were allegedly "sold" to HTC pursuant to the Agreement. For the reasons set forth below, Apple respectfully requests that the Court dismiss this action with prejudice for lack of standing.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On September 7, 2011, HTC filed its complaint against Apple for alleged infringement of U.S. Patent No. 5,418,524 ("the '524 patent"), U.S. Patent No. 5,630,152 ("the '152 patent"), U.S. Patent No. 5,630,159 ("the '159 patent"), and U.S. Patent No. 5,302,947 ("the '947 patent") (collectively "the Asserted Patents"). Dkt. No. 1. On October 31, 2011, Apple filed its Answer and Counterclaims (Dkt. No. 7) and on November 28, 2011, HTC answered the Counterclaims. Dkt. No. 13. HTC and Apple have exchanged Initial Disclosures under Fed. R. Civ. P. 26(a)(1)(a) and have exchanged initial discovery requests and responses pursuant to Fed. R. Civ. P. 26 and 33. The parties are scheduled to exchange patent submissions in September and October, 2012.

On August 1, 2012, the parties filed a Joint Stipulation and [Proposed] Order to Stay Proceedings and Expedite Briefing on Apple's Standing Defense. Dkt. No. 46. The Court has not yet ruled on the parties' joint stipulation.

## III.    SUMMARY OF ARGUMENT

HTC has not and cannot establish standing to sue as is required before this Court can consider the merits of its claims under Article III of the Constitution as Google did not transfer "all substantial rights" to the Asserted Patents to HTC.

## IV.     STATEMENT OF FACTS

On or about August 29, 2011, Google and HTC executed a "Patent Purchase Agreement" purporting to transfer rights in the Asserted Patents, as well as five other patents, to HTC. Corbett Decl., Ex. A. The following week, HTC sued Apple as to the Asserted Patents in Delaware and as to the remaining five patents in both Delaware and the ITC. Dkt. No. 1.

In the ITC investigation (Inv. No. 337-TA-808, titled *Certain Electronic Devices with Communication Capabilities, Components Thereof, and Related Software* ("the 808

Case 1:11-cv-00785-GMS   Document 71   Filed 10/03/12   Page 8 of 19 PageID #: 1202


Investigation"), Apple filed a motion challenging HTC's standing to assert five U.S. patents that HTC claimed to have acquired from Google pursuant to the Agreement. The Administrative Law Judge ("ALJ") held that HTC lacked standing and issued an Initial Determination partially terminating the 808 Investigation as to the five U.S. patents that HTC claimed to have acquired from Google pursuant to the Agreement. Corbett Decl., Ex. B. HTC petitioned the Commission to review the ALJ's Initial Determination. On July 10, 2012, the ITC Commission issued a Final Determination declining to review the ALJ's Initial Determination regarding HTC's lack of standing. Corbett Decl., Ex. C. As such, the 808 Investigation was partially terminated for lack of standing as it related to the patents HTC allegedly acquired from Google.

It is important to note that Google is a major player in the Open Handset Alliance that produces the Android mobile operating system, and Google derives substantial revenues when HTC and others sell handsets running Android. *See* Corbett Decl., Ex. D. Google has publicly stated that it would acquire patents in order to "'protect the ecosystem' of the Android system." Corbett Decl., Ex. E. The Patent Purchase Agreement represents the product of this "rent-a-patent" strategy.

V.    **ARGUMENT**

    A.    **Legal Standard**

Article III of the Constitution requires a plaintiff to establish standing to sue before a federal court will consider the merits of its claims. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) *cert. denied,* 132 S. Ct. 115, 181 L. Ed. 2d 39 (U.S. 2011) ("Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue."). Constitutional standing exists if the plaintiff suffered an injury-in-fact that is both traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

To survive a motion to dismiss under Rule 12(b)(1), HTC bears the burden of establishing that proper standing existed at the time the suit was filed and "if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) and *Gaia Tech., Inc. v. Reconversion Tech., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996)).

Standing to sue in a patent infringement action is derived from 35 U.S.C. § 281 which provides "A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *see also Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). The question of whether a plaintiff lacks standing to assert a patent-in-suit cannot be waived. *See, e.g., Pandrol USA, LP v. Airboss Ry. Prods., Inc.,* 320 F.3d 1354, 1368 (Fed. Cir. 2003) (internal citations omitted) ("It is well established that any party, and even the court *sua sponte,* can raise the issue of standing for the first time at any stage of the litigation, including on appeal.").

A party lacks standing when it does not possess "all substantial rights in the patent[s]." *Propat Int'l Corp. v. RPost, Inc*., 473 F.3d 1187, 1191 (Fed. Cir. 2007). The Federal Circuit has stated that "[t]he critical determination regarding a party's ability to sue in its own name is whether an agreement transferring patent rights to that party is, in effect, an assignment or a mere license" and this determination is made by examining "whether the agreement transferred all substantial rights to the patents and whether the surrounding circumstances indicated an intent to do so." *Asymmetrx, Inc.* v. *Biocare Med., LLC,* 582 F.3d 1314, 1319 (Fed. Cir. 2009) (internal quotations omitted) (citing *Vaupel Textilmaschinen KG* v. *Meccanica Euro Italia SPA,* 944 F.2d

870, 873-874 (Fed. Cir. 1991)). Moreover, "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Waterman v. Mackenzie,* 138 U.S. 252, 255 (1891); *Textile Prod., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998) (citations omitted)("A licensee is not entitled to bring suit in its own name as a patentee, unless the licensee holds "all substantial rights" under the patent. Such a licensee is in effect an "assignee" and therefore a patentee.").

### B. HTC Does Not Hold All Substantial Rights To The Asserted Patents.

As set forth above, HTC must hold all substantial rights to the Asserted Patents in order to bring suit, and "[w]hen a party holds all rights or all substantial rights, it alone has standing to sue for infringement." *Morrow v. Microsoft Corp.,* 499 F.3d 1332, 1340 (Fed. Cir. 2007). An assignee may acquire standing to assert a patent:

> The patentee or his assigns may, by instrument in writing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers.... Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent and no right to sue at law in his own name for an infringement.

*Vaupel Textilmaschinen KG,* 944 F.2d at 873-74*, citing Waterman* 138 U.S. at 255 (citations omitted). HTC does not possess any of the combination of exclusive rights as listed in the Federal Circuit's decision in *Vaupel.* The terms of the Agreement do not transfer all substantial rights to the Asserted Patents to HTC, but merely provides a sham assignment ▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ HTC cannot

6

satisfy its burden of establishing standing to bring suit and Apple's motion to dismiss should be granted.

### 1. HTC Does Not Hold Exclusionary Rights to the Asserted Patents

HTC lacks the requisite standing to bring suit against Apple because HTC does not hold the exclusionary rights required to suffer legal injury by Apple's alleged infringement. To determine whether HTC has standing, this Court must look to the exclusionary rights granted to HTC in the Patent Purchase Agreement. *WiAV Solutions LLC v. Motorola, Inc.,* 631 F.3d 1257, 1265 (Fed. Cir. 2010), reh'g denied (Feb. 4, 2011)("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury."). A party lacks exclusionary rights in a patent establishing standing to bring suit against an alleged infringer if the alleged infringer has the ability to obtain a license to the patents at issue from another party with the right to grant it. *Id.* at 1266 (party alleging exclusionary rights "lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it").

Indeed, the Federal Circuit in *Speedplay* held that the right to bring suit is illusory when another party has the unfettered right to sublicense. *Speedplay, Inc. v. Bebob, Inc.,* 211 F.3d 1251, 1251 (Fed. Cir. 2000). In *Speedplay*, the grantor retained the right to sue, but granted the plaintiff Speedplay an "exclusive, worldwide, royalty-free, right and license under and to the Licensed Patents and the exclusive rights and license to manufacture, have manufactured, distribute, market, use and sell the Licensed Product and any other apparatus, instrument, device or product covered in whole or in part by the License Patents." *Id.* at 1250. The Federal Circuit held that even though the grantor retained the right to sue, such a right was illusory because "Speedplay can render that right nugatory by granting the alleged infringer a royalty-free

7

sublicense." *Id.* at 1251.  If followed then, that with the unfettered right to sublicense, comes the ability to control enforcement since the party with the right to sublicense can grant a license to the alleged infringer at any moment leaving the party bringing suit with no legal injury.  *Id.*; *see also WiAV Solutions*, 631 F.3d at 1267 (reversed district court decision finding no standing because the accused infringer could not gain a license legally from another party).

 Here, the Patent Purchase Agreement could not be more clear ▌

▌

 Put simply, for all practical purposes, ▌

▌ In other words, ▌

▌ *See Textile Prods., Inc.,* 134 F.3d at 1484-85 (affirming dismissal for lack of standing and evaluating contract to determine whether another party was capable of granting patent license). ▌

8

███████████████████████████████████████████████████████

Corbett Decl., Ex. B at 9-10. ███████████████████████

███████████████████████████████████████████████████████

### 2. HTC Does Not Have The Ability To Sue Any Third-Party

The Agreement further ██████████████████████████████

████████████. ████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████ *See Fairchild Semiconductor Corp. v. Power Integrations, Inc.,* 630 F. Supp. 2d 365, 371 (D. Del. 2007) (*citing Sicom Sys. Ltd. v. Agilent Tech., Inc.*, 2004 WL 2272273 (D. Del. Oct. 5, 2004)) *aff'd sub nom. Sicom Sys., Ltd. v. Agilent Tech., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) (holding that the limitations placed on the ability to sue were insufficient to confer standing).

Pursuant to the Agreement, █████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

9

H). █████████████████████████████████████████████████████████

████████████████████████████

If HTC desires to enforce the patents that it allegedly already owns against any other alleged infringers, ██████████████████████████ Corbett Decl., Ex. A at § 2.3. As such, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████

As such, HTC does not hold all substantial rights in the Asserted Patents.

### 3. HTC Faces Significant Restrictions On Its Ability To Transfer The Asserted Patents To A Third-Party

The Federal Circuit has held that "[t]he right to dispose of an asset is an important incident of ownership, and such a restriction on that right is a *strong indicator* that [an] agreement does not grant all substantial rights...." *Propat Int'l*, 473 F.3d at 1191 (Fed. Cir. 2007) (emphasis added)  In fact, a licensee's right to sublicense is an important consideration in evaluating whether a license agreement transfers all substantial rights.  *See, Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1380 (Fed. Cir. 2000).  As a result "[l]imits on a transferee's assignment rights weigh in favor of finding that an agreement constitutes a transfer of fewer than all substantial rights in a patent." *Intellectual Prop. Dev.,* 248 F.3d at 1345 (citing *Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1132 (Fed. Cir. 1995)).  Put simply, restrictions on a right to transfer are fatal to standing. *Sicom Sys.,* 971 F.3d at 974 .

Here, the Agreement significantly  Corbett Decl., Ex. A at § 2.3(b).

10



*see New Medium Tech., LLC v. Barco N.V.*, 644 F. Supp. 2d 1049, 1054 (N.D. Ill. 2007) (finding that plaintiffs lack of "any incentive to negotiate with third parties for the sale of their rights" due to financial obligations weighed heavily against a finding of standing).

The net effect of these provisions is that ▮▮▮▮▮▮▮▮▮▮▮▮ As held in the 808 Investigation, "[t]hese terms render illusory any right HTC may have had to dispose of its interest related to the Google Patents. Not only would HTC ▮▮▮▮▮▮▮▮ Corbett Decl., Ex. B at 12. These restrictions are fatal, and thus HTC does not have all substantial rights in the Asserted Patents.

    **4. The Title of The Agreement Does Not Convey Substantial Rights Onto HTC**

The mere fact that the Agreement is titled a "Patent Purchase Agreement" and that it includes an exhibit titled "Assignment of Patent Rights" is immaterial. A patent purchase agreement may be titled in any number of misleading ways, but unless there is a transfer of all substantial rights, the purchaser does not possess standing to bring suit in their own name. In

11

fact, the Federal Circuit has emphasized that the title of an agreement "is not determinative of the nature of the rights transferred under the agreement; actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Prop. Dev., Inc.,* 248 F.3d at 1344; *see also Sky Tech. LLC v. SAP AG,* 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("[I]t is the 'substance of what was granted' that determines the rights in the patent, not the form.").

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ As discussed above, the Patent Purchase Agreement is teeming ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ supporting Apple's position that HTC does not have substantial rights to the Asserted Patents and, therefore, no standing to assert them in this litigation against Apple.

    **C.    HTC's Reliance On A "Common Interest Privilege" Between HTC and Google Highlights Google's Continued Legal Interest In the Asserted Patents.**

The Federal Circuit has further held that "[t]o determine whether an agreement to transfer rights to a patent at issue amounts to an assignment or a license, we must ascertain the intention of the parties and examine the substance of what was granted." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.,* 434 F.3d 1336, 1340 (Fed. Cir. 2006). The intent from the Agreement itself is clear – ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ HTC has prevented Apple from determining any other intent behind the Agreement ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Corbett Decl., Ex. I. HTC's reliance on the common interest privilege is significant and further highlights Google's continued interest in the Asserted Patents.

12

Normally, if privileged information is voluntarily disclosed to a third party, the attorney-client privilege is waived, but the common interest doctrine creates an exception to this general rule. *Constar Int'l, Inc. v. Cont'l Pet Techs., Inc.*, 2003 WL 22769044, at *1 (D. Del. 2003). The common interest privilege protects communications between individuals and entities and counsel for another person or company when the communications are "part of an on-going and joint effort to set up a common defense strategy." The members of the community of interest "must share at least a substantially similar legal interest." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 263 F.R.D. 142, 146 (D. Del. 2009); *see also Corning Inc. v. SRU Biosystems, LLC, 223 F.R.D. 189*, 190 (D. Del. 2004) (holding that the interest must be "legal, not solely commercial.").

The issue of a common interest privilege has arisen in the context of patent rights. This Court has held that the common interest privilege protects communications between plaintiff's counsel and a non-party's counsel if they share a common legal interest in developing patents through a cross-license and the communications are made in anticipation of a lawsuit. *Constar Int'l, Inc.*, 2003 WL 22769044. In contrast, this Court found where disclosures were made not in an effort to formulate a joint defense but rather to persuade the third party to invest in defendant, the common interest privilege is inapplicable. *Corning Inc.,* 223 F.R.D. at 190. The common interest doctrine also is inapplicable to communications between a patentee and potential investors in litigation. *Leader Tech., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010).

By relying on the common interest privilege, HTC admits that Google shares a significant *legal* interest in the Asserted Patents. The entries on HTC's privilege log make the point: they describe communications between Google and HTC to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13

███████████████████████████████████████████████ Corbett Decl., Ex. I

(emphasis added).

## VI.     CONCLUSION

For the reasons set forth above, HTC does not possess all substantial rights in the Asserted Patents, can suffer no legal injury from their alleged infringement, and lacks standing to pursue infringement claims based on them.  Apple respectfully requests that the Court dismiss this action with prejudice based on HTC's lack of standing.

Dated: August 22, 2012

Public version filed October 3, 2012

                                        */s/ Richard K. Herrmann*
                                        Richard B. Herrmann (#405)
                                        Mary B. Matterer (#2696)
                                        MORRIS JAMES LLP
                                        500 Delaware Avenue, Suite 1500
                                        Wilmington, DE  19801
                                        (302) 888-6800
                                        rherrmann@morrisjames.com

                                        *Attorneys for Defendant Apple Inc.*

*Of Counsel:*

Mark Fowler (*Pro Hac Vice*)
Christine Corbett (*Pro Hac Vice*)
Gerald Sekimura (*Pro Hac Vice*)
Carrie Williamson (*Pro Hac Vice*)
Robert Buergi  (*Pro Hac Vice*)
Krista Celentano (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA  94303-2215
Phone: (650) 833-2065
Fax:    (650) 687-1204

Kathryn Riley Grasso (*Pro Hac Vice*)
**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 797-2004
Fax:    (202) 797-5000

15